Allen, J.
This case presents the question whether a voluntary deed made by a husband to his wife, whereby he conveyed to her the whole of his estate, real and personal, though void at law, can, under the circumstances, be set up in equity as against the heir of the husband, who was his- nephew. The evidence as it seems to me does not make out a case of valuable consideration. • There is not to my mind any satisfactory proof of an express contract between the husband and wife and her sons by a former marriage, whereby the former, in consideration of the labor of his step *262 sons for his benefit or the future support of himself an(J age<^ sisters, agreed to make the conveyance. These circumstances may, and I think do, show a strong moral obligation on the part of the husband to ma^e some provision for his wife and step children ; and therefore are proper to be looked to, as showing the intent of the conveyance and the motives which induced it; but do not constitute such a valuable consideration as would protect the property against the creditors of the husband.
It is a maxim of equity that the court will not interfere in favor of a mere volunteer. The mere intention to bestow a bounty, however clearly proved, is not of itself sufficient to create a binding engagement: Some consideration is essential to the validity of the act.
In consequence of the unity of person between the husband and wife, neither can grant to the other an estate to take effect in possession during the coverture. Lit. § 168. But although such conveyance be void at law, a court of equity is not precluded under certain circumstances, from giving effect to it. Shepard v. Shepard, 7 John. Ch. R. 67.
A controversy has existed in the English Chancery court as to the extent to which a mere voluntary assignment of an equitable interest or chose in action will be enforced in equity. The cases on the subject are reviewed in the note to Ellison v. Ellison, in White’s Leading Cases in Equity 167, 65 Law Lib. 192. The authorities are to some extent conflicting, but the result deduced from them is, that where a trust is actually created, and the relation of trustee and cestui que trust established, a court of equity will in favor of volunteer, enforce the execution of the trust against the person creating it and all subsequent volunteers; jalthough it will not create a trust or establish the relationship of trustee and cestui que trust by giving effect 'to an imperfect conveyance in favor of a volunteer. A *263 later case of Kekewitch v. Manning, 12 Eng. L. and E. R. 120, of which however I have only seen au abstract, is said to have decided that a mere voluntary settlement of an equitable reversionary interest is binding and may be enforced as against the settlor. But the principles involved in those decisions are applicable only to cases where there was no consideration of any kind for the assignment or conveyance. They do not touch the question how far a court of equity will lend its aid in giving effect to an imperfect conveyance founded on a mere meritorious consideration, meaning thereby a provision for a wife or children after marriage. In the case of Colman v. Sarrel, 1 Ves. jr. R. 50, a voluntary deed had been executed purporting to be an assignment of stock to trustees for the benefit of a stranger: Lord Thurlow refused to sustain the assignment, remarking, whenever you come into equity to raise an interest by way of trust, you must have a valuable or at least a meritorious consideration.
In the leading case of Ellison v. Ellison, Lord Eldon remarked, that where an actual transfer was made, that constituted the relation of trustee and cestui que trust, though voluntary and without good or meritorious consideration : And in another part of his opinion he adverts to the difference between a deed for pure volunteers and one making a provision for a wife and children. These expressions show that both Lord Thurlow and Eldon recognized the distinction between a deed making provision for a wife or children, and a stranger; and that the meritorious consideration in the first case would authorize a court of equity to give effect to an imperfect deed. In Ellis v. Nimmo, Lloyd & Goold 333, 10 Cond. Eng. Ch. R. 534, the direct question came up for decision in the High court of chancery in Ireland, before Sugden, lord chancellor. In that case a postnuptial agreement in writing, by which a father undertook to make a provision for a *264 child, being a contract founded on a meritorious consideration, was specifically executed against the settler. That distinguished jurist took time to consider the question, remarking that it was a singular fact that it had never been decided : and after a review of all the . . cases bearing on the question, he held that the meritorious consideration was a sufficient consideration to sustain the agreement. He rests his decision mainly upon the cases in which equity interposes in aid of a defective execution of a power or surrender of a copy-hold, which do not arise out of contract, but depend upon an intention to settle. In all those cases a sufficient consideration was necessary to call into exercise the powers of a court of equity; and a provision for a wife or child being a meritorious consideration, had always been held as sufficient to enable a court to remedy a defective settlement, where there is no contract.
The cases of Dillon v. Coppin, 4 Mylne & Craig, 647, 18 Eng. Ch. R. 646, and Jefferys v. Jefferys, 1 Craig & Phil. 138, 18 Eng. Ch. R. 137, are referred to in the note in White’s Leading Cases in Equity as having overruled Ellis v. Nimmo. But as is shown by a review of these cases by the American editor, they were decided on different grounds. In the case of Dillon v. Coppin, it was an imperfect transfer, and the circumstances did not indicate an absolute intention of the parent to make it. The father retained the deed in his possession during his life, and had endorsed on an envelope on the deed that it was to be given to his daughter at his death: And the case was between children of the same testator, so that the meritorious consideration was balanced. The case of Jefferys v. Jefferys was the case of a child to whose use the father had covenanted to surrender a copyhold, against the wife to whom he had devised it; and who after his death had been admitted. The two classes were *265 equally meritorious, the children and1 the widow. From this review of the English cases the American editor states the result of the English authorities be, that equity will aid a defective transfer which was intended and meant to be a complete present transfer t x _ upon a meritorious consideration, against one not standing in the relation of wife or child, as a brother or other collateral relation: but that it will not interfere between those standing upon the same meritorious consideration, being children, or children and widow of the person whose estate is in question. If such was the fair result of the English cases adverted to, the rule would hold a fortiori since the case of Kekewitch v. Manning, ubi supra; for according to the abstract of that case, a merely voluntary settlement of an equitable reversionary interest was enforced in favor of a niece against the settler herself, after a total change of circumstances, and after an express revocation by the settler, before it had ever been acted on.
The question has never been decided in this court. In Darlington v. McCoole, 1 Leigh 36, the bill was filed to set up an alleged agreement by which the father in law after marriage gave to the son in law the land in question, so far as he could give it by parol and putting him in possession. The bill was filed after the death of his wife and her father, against the sor and devisee of the father. Brooke, judge, in giving the opinion of the court, remarked that in such a case, when the donor had received and the donee lost nothing, when the chief motive for the gift, a provision for the daughter, was annihilated by her death, and the father had discharged the moral obligation to provide for her issue, there was nothing to call into action the powers of a court of equity. There was neither a valuable or a meritorious consideration, without one of which a court of equity will not aid a defec *266 tive conveyance ; much less enforce a bare agreement, even if if were in writing. The case is no authority on the question involved in the one now under consi"deration; but it serves to show the impression on the minds of the iudaes of this court, that where there . J ° was a meritorious consideration, meaning thereby a provision for a wife or child, equity would enforce a defective conveyance.
In McIntyre v. Hughes, 4 Bibb. R. 186, the Court of appeals of Kentucky enforced specifically an obligation by the father to his son for the conveyance of land, against the other children of the obligor, the father being dead, although fouiided on the consideration of blood only. The judge, in giving the opinion of the court, remarked, that under the statute of uses, the proximity of blood between the father and son is sufficient to support a covenant by the father to stand seized to the use of the son; and if so, it must have been prior to the statute, a sufficient consideration to have created the use ; that prior to the statute transferring the possession to the use, it was the common practice to resort to equity to enforce the execution of a use, and that proximity of blood had always been a sufficient consideration for the interposition of equity, where there was no other circumstance in the case to forbid such interposition. In the case of Ellis v. Nimmo, Lord Chancellor Sugden refers to the practice under the statute of uses, and rests his decision in some measure upon the same reason which had previously operated on the Court of appeals of Kentucky.
In Dennison v. Goehring, 7 Barr. Pa. R. 175, Gibson, chief justice, remarked, that natural affection, though not a valuable is a meritorious consideration, on the foot of which an agreement by a father to secure a provision for his child has been enforced in equity. In the case of Buford's heirs v. McKee, 1 Dana R. 107, it was decided that this principle of a mérito *267 rious consideration would not be extended to collateral relations. And in other cases it is held that although such voluntary agreements are executed when in favor of a wife or child, it is only done where the agreement is under seal, which imports a consideration at law.
The case before us steers clear of all the difficulties suggested by any of the. cases referred to. The provision was for a wife, not by a parol agreement or an agreement not under seal, but by regular conveyance under seal. No creditor was injured, and the party claiming against the deed, is not the grantor himself or a subsequent purchaser for value without notice, or one standing in the relation of a wife or child; but a collateral relation, the nephew of the grantor. The proof shows that the consideration was not only meritorious in consequence of the relation between the husband and wife, but that the grantor regarded it as highly meritorious; and that his object was not only to make provision for his wife, but through her to acquit himself in part of the obligation which he admitted he owed to her and her sons for their labor on his farm, and the support thereby afforded to himself and his aged and infirm sisters. He told his friend on his death bed, that lie intended his property to go to his wife during her life time and then to his step sons, for the reason that they had worked to support him iii'his old age; and that be had executed a paper which he thought would secure his property to his wife and his step sons.
He further stated that one of the considerations on which he had given his property to the young Obenchains was, that they should take care of his sisters and support them decently during their lives: and he frequently told the witness he could not have supported himself and his sisters without the aid of his step sons. This proof may not amount to evidence of *268 a direct contract for a valuable consideration. But it Pr°ves the grantor’s own sense of the obligation rest-upon him, and obviates any objection to .the deed consequence of its embracing all his small estate. He had confidence in his wife and her children, that . they would continue as they had done to provide for the wants of himself and his sisters. In this he was not mistaken. Three of his sisters survived him, and were maintained by his widow and children as long as they lived: though the evidence shows the charge was a heavy one. These sisters with their nephew, were the heirs of the grantor, and as such entitled to three-fourths of his estate: and it does not appear that either of them preferred any claim to the property after the death of their brother.
The claim of the appellees to the aid of a court of equity to aid and enforce the deed from the husband to his wife, is in all its respects stronger than the case of Shepard v. Shepard, 7 John, Ch. R. 63; which was a case of a deed from husband to wife, void at law, but aided and enforced in equity; it is as in that case, the safest and most effectual relief; and it is that which the grantor intended. One of the witnesses proves that he said he had made a will making the same disposition of his property that was made by the deed. But being apprehensive his will might not stand, and being informed he could convey his property to whom he pleased, he made the conveyance in question. I think it was intended to be an operative instrument from the time of its executon; and that as it was defective at law, it presents a proper case for the interposition of a court of equity to aid the defect.
The other judges concurred in the opinion of Allen, J.
Decree affirmed.